No petition for Certiorari was filed.
Mrs. Jennie Boone, a citizen of Wynne, Cross county, Arkansas, is prosecuting a writ of error from a decree of the chancery court of Shelby county dismissing her bill.
Hereafter, in this opinion, we will refer to Mrs. Jennie Boone as complainant and Mrs. Florence E. Boone as defendant.
The defendant is a resident of Memphis, Tennessee. The defendant is the administratrix of the estate of J.N. Boone, deceased, having been appointed by the probate court of Shelby county, Tennessee. J.N. Boone was the son of the complainant and the husband of the defendant. J.N. Boone married the defendant the 22nd of December, 1916, at 327 McLemore avenue, in Memphis, Tennessee. The defendant was a citizen of Tennessee at the time she married J.N. Boone. J.N. Boone was about forty-three years of age at the time he married, having never been married prior to his intermarriage with the defendant. J.N. Boone lived in Wynne, Cross county, Arkansas, from the time of his birth until his marriage. He died on the 17th of November, 1923, in a hospital in Fort Smith, Arkansas. J.N. Boone's father was named Daniel Boone. He had died some years prior to J.N. Boone's marriage. After the death of J.N. Boone, his body was removed from Ft. Smith, to Wynne, Arkansas, and buried in a cemetery in which we presume his father was buried. J.N. Boone left some real estate, worth about $2000, consisting of two houses in Wynne, Arkansas, and he had personal property consisting of cash and certificates of time deposits issued by various banks of Memphis, Tennessee, amounting to something over $27,000.
Under the laws of Arkansas, if J.N. Boone's domicile was in Arkansas this personal property would descend, one-half to the complainant and one-half to the defendant; under the laws of Tennessee, if J.N. Boone was a citizen of Tennessee and his domicile was in Memphis, all the personal property would pass to the widow (the defendant).
Complainant filed her bill to recover one-half of the personal estate on the ground that her son's home and domicile was in Wynne, Arkansas, at the time of his death. The widow denied this contention and insisted that his domicile was Memphis, Tennessee. With the issues thus formed numerous depositions were taken — more than fifty — the cause was submitted to Special Chancellor Lois Bejach, who in a written finding of facts decided that the *Page 143 
evidence preponderated in favor of the defendant and complainant's bill was dismissed. Within due time she excepted to the decree dismissing her bill, prayed and was granted an appeal but did not perfect the same, but within proper time filed a transcript in this court for error. She has assigned numerous errors in this court but it is not necessary to set out the assignments of error in this opinion. They raise but one question, and that is, was the court in error in holding that J.N. Boone was a citizen and had his domicile in Memphis, Tennessee.
It has been said of the Greek poet Homer, during his life no city claimed him and he had no home while living, but after his death seven cities claimed Homer as a citizen. We do not have seven cities claiming J.N. Boone as a citizen but we have two claimants, each with witnesses to substantiate their claims — one claiming he was a citizen of Arkansas, domiciled at Wynne, and another claiming he was a citizen of Tennessee, domiciled at Memphis. In addition to these claims, J.N. Boone had a number of temporary homes or residences for several months at the time. At the time of his marriage he was a traveling salesman, for a drug house in Paducah, Kentucky. He represented this concern for a number of years. Shortly after his marriage the Paducah concern was purchased by the Paris Medicine Company of St. Louis, Missouri, and this concern employed J.N. Boone as a salesman. During his married life he was assigned by his house to various territories and he represented his employer in South Carolina, Florida, Oklahoma, Kansas, Missouri, Arkansas and Kentucky. At the time of the marriage of J.N. Boone and the defendant, she was renting rooms from a Mrs. Parker at 327 McLemore avenue, Memphis, Tennessee, where the marriage ceremony was performed. It appears that, after their marriage, Boone would leave his rooms in Memphis oftentimes, would be accompanied by his wife and they would go into various territories assigned them and there have temporary headquarters. Sometimes they would board for several months in towns in South Carolina, Oklahoma, Florida and other states and Boone would spend the week ends with his wife in these various temporary boarding places or apartments. It appears that J.N. Boone built a home in Wynne, Arkansas, while he was single and had his father and mother to move from the country to live with him, or he lived with his father and mother. The defendant owned a home in Wynne, Arkansas, and she had furniture stored in this home during her married life to J.N. Boone. J.N. Boone returned about twice a year to visit his mother and other relatives in Wynne. It appears that he had four brothers living in Arkansas. The defendant also had a grandmother and a number of other relatives in Wynne. During certain seasons of *Page 144 
the year J.N. Boone and his wife would send clothing to the complainant, asking her to keep same for them until the defendant and her husband needed the clothes. In warm weather they would send their winter clothing to the complainant and when the seasons changed they would send summer wearing apparel and have their winter clothes sent to them. As J.N. Boone wrote to his mother (and it appears she was very dear to him) he gave expressions to Wynne being his home; such expressions as, "I am coming home" or "I expect to come home." On the other hand we find that after he located in Memphis he had all of his mail sent to Memphis, transferred his money from Arkansas banks to Memphis banks; that he procured an identification card from the Travelers Protective Association and gave 327 McLemore avenue as his home. He tried to buy three different homes in Memphis, two of them being near 327 McLemore avenue and carried on negotiations with the owners of these places. In one instance he could not agree on the price and for this reason the trade was not consummated, but he expressed to numerous people in Memphis that Memphis was his home and he expected to quit traveling and open a drug store or go into the drug business in Memphis. He informed the bankers with whom he did business in Memphis that Memphis was his home. It appears that while Mrs. Boone was accompanying her husband on one of his trips into South Carolina she became ill and was treated for ten days or more by a physician. This physician testifies that J.N. Boone told him that his residence was in Memphis. They had numerous conversations during their acquaintance. Other witnesses from Charleston, South Carolina, testify as to J.N. Boone stating that he lived in Memphis, Tennessee; that it was his permanent home. A witness with whom the defendant and her husband lived for a few weeks in Florida testified that J.N. Boone showed him a picture of the home that he (Boone) owned in Wynne, Arkansas, and said, in substance, it was the place he owned; that it was occupied by his mother; that his home was in Memphis, Tennessee. These facts are corroborated by witnesses with whom the defendant and her husband boarded with and lived with in Oklahoma City and Wichita, Kansas. Boone told the physician who treated him in his last illness in Fort Smith, Arkansas, that his home was in Memphis, Tennessee. This physician advised him to write a will, and he stated that a will was unnecessary that his wife would get all that he had. When he entered the hospital he gave his permanent address as 327 McLemore avenue. Mrs. Boone was treated by a physician in Oklahoma City, and J.N. Boone and Mrs. Boone at that time, something like a year before his death, stated that their permanent home was in Memphis, Tennessee. He owned an automobile which *Page 145 
he purchased a few months before his death and his application for license stated his address was 327 McLemore avenue.
We are of opinion from the weight of the evidence that J.N. Boone was once domiciled in Cross county, Arkansas, but that he changed his domicile to Memphis, Tennessee. This question is not free from doubt, there is considerable conflict in the evidence, but after a careful and thorough examination of all the evidence, taking into consideration the witnesses who are interested by kinship and friendship, and those who are without any interest whatever in the result of this cause, we are constrained to hold, as a fact, that the deceased J.N. Boone was a citizen of Memphis, Tennessee, at the time of his death and that Memphis was his domicile.
A man may have two or more residences but only one domicile or legal residence. He must have a domicile somewhere; he can only have one; therefore, in order to lose one he must acquire another. Domicile and residence are not synonymous terms in the law relating to the situs for taxes. Domicile imports a legation relation issuing between a person and a particular place, based on actual residence, plus a concurrent intention there to remain as at a fixed abiding place. The law will, from facts and circumstances, fix a legal residence for him, unless he voluntarily fixes it himself, and when a legal residence is once fixed it requires both fact and intention to change it. As contra-distinguished from a legal residence, he may have an actual residence in another state or county. He may abide in the latter without surrendering his legal residence in the former, provided he so intends.
There is no proof that J.N. Boone ever voted after his marriage. We infer that he did not. He had a brother who was a candidate for tax assessor shortly after his marriage. It appears that J.N. Boone returned to Wynne in behalf of his brother's candidacy and solicited some of the electors to vote for his brother. One witness said that J.N. Boone gave him a cigar while he was electioneering with him in behalf of candidate Boone. The defendant testified that her husband would not vote in that election for his brother. She states that she knows this as a fact and there is no proof offered that he did vote. However, this race was shortly after his marriage and it appears that about four years later the same brother made the race for sheriff, and there is no proof to show that J.N. Boone came into Cross county at the time of the sheriff's race to render assistance or aid to his brother's candidacy.
It results that all of the assignments of error are overruled, the writ of error is dismissed and the judgment of the lower court is affirmed. *Page 146 
Complainant and her surety on the writ of error bond will pay all the cost of the cause, for which execution will issue.
Senter and Heiskell, JJ., concur.